Ross **J. BALDWIN** and Dorothy E. Baldwin, Plaintiffs-Appellants,

v.

**LOEW'S INCORPORATED,** a Delaware corporation, et al., Defendants-Appellees.

No. 13810.

United States Court of Appeals
Seventh Circuit.

Jan. 16, 1963.

388

Victor M. Harding, Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for plaintiffs-appellants.

Steven E. Keane, David E. Beckwith, Foley, Sammond & Lardner, Milwaukee, Wis., for appellees, Loew's Inc., Paramount Film Distributing Corp., RKO Radio Pictures, Inc., Columbia Pictures Corp., Warner Bros. Pictures Distributing Corp., Warner Bros. Circuit Management Corp., Warner Bros. Theatres, Inc., Twentieth Century-Fox Film Corp., United Artists Corp. and Universal Pictures Corp. Lester S. Clemons, William K. McKibbage, Quarles, Herriott & Clemons, Milwaukee, Wis., for appellees, Fox Wisconsin Theatres, Inc. and Fox Amusement Corp.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Ross J. Baldwin and Dorothy E. Baldwin, plaintiffs, have appealed from an order of the district court dismissing their civil action against Loew's Incorporated, a Delaware corporation, Paramount Film Distributing Corporation, a Delaware corporation, RKO Radio Pictures, Inc., a Delaware corporation, Columbia Pictures Corporation, a New York corporation, Warner Bros. Pictures Distributing Corporation, a New York corporation, Warner Bros. Circuit Management Corp.,[1] Warner Bros. Theatres, Inc., a New York corporation, Twentieth Century-Fox Film Corporation, a New York corporation, Fox-Wisconsin Amusement Corporation, a Delaware corporation, Fox-Wisconsin Theatres, Inc., a Delaware corporation, United Artists Corporation, a Delaware corporation, and Universal Pictures Corporation, a Delaware corporation.

Plaintiffs' complaint, filed June 26, 1953, and an amended and supplemental complaint presented for filing on June 10, 1957 and actually filed pursuant to leave of court on April 2, 1962, made allegations of facts which were considered by the court in disposing of defendants' motion for summary judgment. The following statement contains those facts.

a. Plaintiffs are and have been since 1931 the owners of the Tosa Theatre, a motion picture theatre in the city of Wauwatosa, Wisconsin. Defendants include all of the major motion picture film distributors in the United States, and at the time this action was commenced they controlled 90% of the production and distribution of motion picture films in the United States.

b. In 1931 the Tosa Theatre was the best equipped neighborhood theatre in the Milwaukee area. Plaintiffs then sought from defendants the first playing availability of pictures after they played in the downtown Milwaukee theatres, but the request was refused until a film had played in the Uptown Theatre, an older neighborhood Milwaukee theatre, located over 2 miles from plaintiffs' theatre. The Uptown was then owned or operated by one of the defendants. Plaintiffs' theatre was arbitrarily placed by defendants in the same zone as the Uptown Theatre, and, under the rigid zoning and clearance system of film release maintained by defendants in the Milwaukee area, plaintiffs were precluded from playing motion pictures until the picture had first played the Uptown Theatre.

c. This situation prevailed until 1934 when the Times Theatre was opened in the western outskirts of the city of Milwaukee, in a building which had been remodelled from a garage and was far inferior as a theatre to the Tosa Theatre. Because the operator of the Times Theatre was a circuit operator of a number of other theatres, he was able

1. Later known as Stanley Warner Management Corporation.

to secure from defendants a playing position ahead of the Tosa Theatre.

d. About 1938 one of the defendants took over the operation of the Times Theatre, at which time the playing position thereof was advanced, to the further detriment of the Tosa Theatre.

e. Plaintiffs made repeated demands on defendants for a better playing position for the Tosa Theatre, but in vain. The Tosa Theatre, under plaintiffs' operation, was compelled by defendants to play pictures only under unreasonable and discriminatory terms of clearance and availability.

f. The reason plaintiffs were unable to obtain motion picture film, except under unreasonable and discriminatory terms, was because defendants were engaged in a continuing conspiracy in the licensing of film, in order to favor their own operated circuits of theatres and the circuits of theatres of others and to suppress the competition of independent theatre operators.[2]

g. As a result of the conspiracy among defendants, plaintiffs were unable to operate the Tosa Theatre on a profitable basis, and in 1940 were forced to lease the theatre to a large circuit operator, on terms far inferior to what plaintiffs would have obtained but for defendants' unlawful conspiracy in restraint of trade. In 1945, plaintiffs made a further lease of the theatre to the same circuit operator at similarly inferior terms, which lease was for a five-year term, with successive options granted to the lessee to renew at five-year intervals until 1965. Because of the continuing conspiracy of defendants, which has granted to circuit theatre operators more favorable terms and privileges, in the releasing of motion picture film, than are available to independent theatre operators, the lessee has been induced to exercise his option to renew the lease at the end of each successive five-year period.

h. The offerings of such favorable privileges to plaintiffs' lessee not available to independent operators, at the times when the lessee exercised the option to renew the lease (*which recurred as recently as December 31, 1955*),[3] constituted overt acts by defendants which injured plaintiffs by prolonging the term of the lease during which they received inferior rentals and lease terms.

According to their brief, plaintiffs' cause of action, arising under section 4 of the Clayton Act, is based on matters complained of in the Paramount case, supra, and found by the Court in that case to exist and to be in violation of the antitrust laws.

█ 1. Defendants, by their separate answers having pleaded the two-year statute of limitations of the state of Wisconsin, Section 330.21(1) Wis.Stats. 1951 and Section 330.19(4) Wis.Stats. 1951, plaintiffs moved the court, pursuant to 28 U.S.C.A. Rule 42(b), for a separate trial on that issue, which was granted.

On motions of defendants for summary judgment, pursuant to 28 U.S.C.A. Rule 56, filed January 31, 1957 and May 21, 1957, the court held *inter alia* that, assuming the relevant averments of the amended and supplemental complaint to be true, § 330.21(1) Wis.Stats. barred plaintiffs' claims. There was no issue of fact presented by the motions before the

2. Plaintiffs allege in their brief in this court:
   "The same conspiracy injured the plaintiffs as was found by the court to exist in the case of United States v. Paramount Pictures, Inc., et al., 85 F.Supp. 881, in the U. S. District Court for the Southern District of New York, which action was pending with respect to certain of the defendants in the instant action from July 20, 1938 until February 7, 1952."

The judgment, findings and conclusions of that action were incorporated as a part of the complaint.

3. The December 31, 1955 exercise of the lessee's option to renew the lease for 5 years was first mentioned in plaintiffs' amended and supplemental complaint filed April 2, 1962. See post 2.

court. In Grengs v. Twentieth Century Fox Film Corp., 7 Cir., 232 F.2d 325, 329 (1956), we considered that act and construed it as requiring an action on a statute penalty to be brought within two years after its accrual and we held that the act's two-year limitation applied to an antitrust cause of action such as that asserted by plaintiffs here. We adhere to our holding in Grengs.

2. In an apparent attempt to conform with Grengs, plaintiffs filed their amended and supplemental complaint within two years after an event upon which they now rest their cause of action. Accordingly they now argue:

"The lessee of the Tosa Theatre was the operator of a circuit of theatres who received privileges and terms from the defendant distributors not available to the plaintiffs and other independent theatre operators. By reason of the continuing conspiracy of the defendants which resulted in this illegal discrimination, the lessee of the Tosa Theatre was *induced* to exercise his option to renew. The granting by the defendants of these privileges and favorable terms to the lessee, *at the time that the lessee exercised his option to renew*, constituted overt acts by the defendants pursuant to the illegal conspiracy charged here and in the government's case in United States v. Paramount." (Italics supplied.)

However in their amended and supplemental complaint, after describing the alleged unlawful practices, they say:

"The foregoing described practices of the defendants forced plaintiffs to lease the Tosa Theatre to the operator of a circuit of theatres under lease terms inferior to the terms which would be available but for said practices of the defendants. By favoring the lessee of plaintiffs' Tosa Theatre in the lessee's operation of the theatre with motion picture film on terms sought by but denied to the plaintiffs, the defend-

ants have prolonged the unfavorable lease of the Tosa Theatre and have caused the said lease to be renewed at successive five year intervals, the most recent being December 31, 1955."

■ Where one has been injured by a civil conspiracy a statute of limitations begins to run at the time that injury is inflicted. In this case that date was when the lease was executed between plaintiffs and the lessee in 1945. Thus in Steiner v. Twentieth Century-Fox Film Corporation, 9 Cir., 232 F.2d 190, 195, the court said:

"* * * In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run. * * *"

In Momand v. Universal Film Exchanges, 1 Cir., 172 F.2d 37, at 49, the court held that the rule of *criminal* antitrust actions that a statute of limitations does not begin to run until the last overt act performed in compliance with the original conspiracy has been accomplished does not apply to a civil action.

A district court in Fleischer v. A. A. P., Inc., 180 F.Supp. 717, 723 (1959), aptly said:

"* * * Where the claim is for an injury inflicted by a civil conspiracy the statute begins to run at the time the injury is inflicted. * * The only injury alleged to have been inflicted since October 13, 1953 is that occasioned by the failure of the defendants to release certain cartoons for television distribution between 1949 and 1956. * * * this failure, under the allegations of this complaint, was not the infliction of an injury but was the accrual of damages resulting from an earlier

alleged invasion of plaintiff's rights. Cf. Muskin Shoe Co. v. United Shoe Machinery Corp., D.C.D.Md.1958, 167 F.Supp. 106, 111–112; Farbenfabriken Bayer, A. G. v. Sterling Drug, Inc., D.C.D.N.J.1957, 153 F. Supp. 589, 593; Pastor v. American Telephone & Telegraph Co., D.C.S. D.N.Y.1940, 76 F.Supp. 781, 784–785. * * * The period of limitations is not extended by the fact that damages from that injury may have continued to accrue. * * *"

■ The exercise in 1955 of an option to extend the lease of 1945, the year in which "the blow which caused the damage was struck", was relevant only as an element of damages. It was not an overt act from which the running of the statute of limitations may be computed. An unnecessary although a real support for this conclusion is the rule in Wisconsin that a lease providing for a term with an option for renewal by either party, when followed by the lessee's holding over without any new arrangement, has the effect of making the original lease a present demise for the full extended term. Nelson v. Nelson, (1918), 168 Wis. 115, 169 N.W. 278, 279; and Sheppard v. Rosenkrans, (1901), 109 Wis. 58 85 N.W. 199, 200.

■ 3. Plaintiffs contend that the district court erred in entering summary judgment, because of its finding that the Paramount case (United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260), "ceased to pend as to all the defendants no later than October 16, 1950. * * * *"[4] They point out that "where no evidence has been offered, * * * it is impossible to determine when the Paramount case ceased to pend."

We do not agree. The determination of when Paramount ceased to pend does not involve an issue of fact. That question was determined as a matter of law by the order of the Supreme Court denying rehearing in that case on October 16, 1950. Twentieth Century-Fox Film Corp. et al. v. United States, 340 U.S. 857, 71 S.Ct. 70, 95 L.Ed. 590.

Even though the orders adjudicating the rights of the parties had been affirmed in Paramount, and a rehearing denied on October 16, 1950, which latter event permitted the running of the statute of limitations in the case at bar, plaintiffs rely on Electric Theatre Co. v. Twentieth Century-Fox Film Corp., 113 F.Supp. 937 (D.C.Mo., 1953), where the court, at 943, pointed out:

"* * * Even though a decree may be issued in an anti-trust suit, the Court may still retain jurisdiction over the parties for the purpose of punishing them for subsequent violations of the decree, as well as for the purpose of granting further relief. * * * In fact, it has been brought to this Court's attention that further decrees have been made in the Paramount case as late as February 7, 1952. * * * Since consent decrees have been entered in the Paramount case as against two of the defendants in this action, RKO and Paramount, we think testimony should be proffered on the nature of those decrees, as well as on the current status of the Paramount litigation from an enforcement standpoint. Only then can this Court render an informed opinion on the question of pendency and its complementary influence on the tolling provision of the Clayton Act. Thus, as to the defendants RKO and Paramount, we shall defer determining the chronological extent of plaintiff's recovery herein of damages as

---

4. 15 U.S.C.A. § 16 provided, in part:
   "Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof. * * *"

against those two defendants beyond the 3-year period of limitation as above determined."

On the other hand, in Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401 (D.C.N.Y., 1961), at 404, the court said:

"* * * Plaintiffs contend that the Paramount action continued to be pending as to the appealing defendants until the dates subsequent to the Supreme Court's denial of rehearing when consent decrees were entered against each of them. The argument is without merit. When the Supreme Court denied rehearing there were decrees in force as to these defendants which fully adjudicated the alleged antitrust violations. The purpose of the consent decrees that followed was merely to provide a method of enforcing the liability which had already been determined. The Paramount action thus ceased to be pending against the appealing defendants—Warner Brothers Pictures, Inc. (In Dissolution), Warner Brothers Circuit Management Corporation, Warner Brothers Pictures Distributing Corporation and Loew's, Inc.—when they were denied a rehearing on October 16, 1950. Leonia Amusement Corp. v. Loew's, Inc., D.C.S.D.N.Y., 117 F.Supp. 747, 761."

With these latter views we agree. They support the action of the district court in entering summary judgment in the case at bar.

4. In view of what we have said herein, we find it unnecessary to consider plaintiffs' last contention, which is that the district court erred in sustaining defendants' contention that plaintiffs are not persons injured in their business or property within the meaning of 15 U.S. C.A. § 15.

For these reasons the order of the district court is affirmed.

Order affirmed.